STATE EX REL. CURTIS and others, Appellants, VS. STEIN-KELLNER and another, Respondents.

*March 13—May 1, 1945.*

2

*Ronald A. Padway* of Milwaukee, for the appellants.

For the respondents there was a brief by *Walter J. Mattison,* city attorney, and *Omar T. McMahon,* assistant city attorney, and oral argument by *Mr. McMahon.*

WICKHEM, J. Several important questions are raised upon this appeal and a statement of the facts at this time will be of help.

On January 21, 1942, defendant Steinkellner, chief engineer of Milwaukee fire department, suspended petitioners for a period of fifteen days without pay. Petitioners were members of the executive board of the Milwaukee Fire Fighters' Association, an A. F. L. affiliate. On January 7, 1942, a news item in the "Milwaukee Journal" quoted a statement by the executive board severely criticizing the chief of the Milwaukee fire department. The article reports the board to have charged the fire chief with Hitler-like methods; with wrecking the morale of the fire department, and that "at least fifty firemen approaching retirement age are looking for defense jobs because of pressure put on them in the fire department;" that the chief had exercised dictatorial methods for years; that he had issued spite orders designed to restrict

union activity. On January 8, 1942, the deputy chief engineer reported to the chief engineer that he had suspended petitioners. On January 10, 1942, petitioners each received a letter ordering him to appear before the chief engineer of the fire department on January 12, 1942. On January 12th each appeared and was taken before a so-called trial board. On this occasion a copy of the charges against each was demanded and refused. Information was given to accused that they had violated certain designated rules of the department. Each of petitioners pleaded not guilty and was interrogated but otherwise had no opportunity to offer defense. On the same day the trial board reported to the chief that the petitioners were guilty as charged, and on January 20th the men were ordered to report to the chief engineer on the 21st. On that date they appeared in the office of the chief engineer who read the report of the trial board, stated that he was satisfied that each was guilty and that suspension would follow. The chief engineer offered to suspend the men for thirty days to give them a chance for a full hearing pursuant to statute before the police and fire commissioners, but each declined this offer and thereupon each was suspended for a period of fifteen days.

Petitioners rely principally upon sec. 62.13, Stats. Sec. 62.13 (5) (b) provides:

"The board or the chief may suspend a subordinate for cause. If the chief suspends a subordinate he shall immediately report the same in writing, with the cause, to the president of the board. . . ."

Sec. 62.13 (5) (c), Stats., provides:

"Every person, chief or subordinate, against whom charges are filed shall be entitled to a copy thereof and shall have an opportunity to be heard in his own defense. Such hearing shall be public, and both the accused and the complainant may be represented by attorney and may compel the attendance of

witnesses by subpœna which shall be issued by the president of the board on request and be served as are subpœnas in justice court."

Petitioners contend that the above sections clearly provide for a hearing which shall satisfy the calls of due process. We are of the view that this contention cannot be sustained. Sec. 62.03 (1), Stats., provides that ch. 62, Stats., shall not apply to cities of the first class under special charter. Ch. 586, Laws of 1911, entitled, "an act to create section 959—46*d* of the statutes, relating to the creation of a board of police and fire commissioners in cities of the first class, providing for the duties thereof and the duties of chiefs of the police and fire departments in such cities," is plainly applicable to the city of Milwaukee and ch. 62, Stats., is not so applicable. In *Van Gilder v. Madison,* 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, this court sustained the power of the legislature to classify cities even in statutes dealing with matters of state-wide concern. In *McCarthy v. Steinkellner,* 223 Wis. 605, 270 N. W. 551, 271 N. W. 374, ch. 586, Laws of 1911, was applied without question to the city of Milwaukee, and we consider that this is a subject which has been completely settled by earlier cases and it is unnecessary therefore to labor this point. The question then is whether ch. 586, Laws of 1911, provides for a judicial or a *quasi*-judicial hearing in cases where a member of the police and fire department is suspended for a period not exceeding thirty days. Sub. 11 of ch. 586, Laws of 1911, provides:

"No member of the police force or fire department shall be discharged or suspended for a term exceeding thirty days by the chief of either of said departments except for cause and after trial as herein provided."

Sub. 13 of ch. 586, Laws of 1911, provides:

"The chief discharging, or suspending for a period exceeding thirty days any member of his force shall immediately

report the same to the secretary of the board of fire and police commissioners together with a complaint setting forth the reasons for such discharge or suspension and the name of the complainant if other than the chief. Within ten days after such discharge or suspension the members so discharged or suspended may appeal from such order of discharge or suspension to the said board of fire and police commissioners. . . ."

It appears to us that these two subsections standing alone are too clear to warrant construction, and the only doubt that is sought to be cast upon their meaning is raised by sub. 12 of ch. 586, Laws of 1911, which provides:

"Whenever complaint against any member of the force of either department is made to the chief thereof, he shall immediately communicate the same to the board of fire and police commissioners and a trial shall be ordered by said board of fire and police commissioners as herein provided."

The trial court was of the view that this related to complaints made against members of the force by persons outside of the department, and we conclude that the trial court was correct for the reason that any other construction would completely destroy the meaning of subs. 11 and 13. In the *Steinkellner Case, supra,* this court had before it the question whether a person who had been demoted was entitled to a trial under provisions of sub. 13. The controversy arose because as will be noted from reading the text, demotion is not specifically mentioned in sub. 13. A majority of this court held, however, that a demotion permanent in character was equivalent to a discharge and that a person so demoted was entitled to a trial. It was held that a temporary demotion and implied that a temporary suspension was within a disciplinary power of the chief. There is nothing in the *Steinkellner Case* to give any comfort to petitioners, and the express language of the statute is wholly against their position.

We conclude that it was within the power of the chief of the fire department to suspend for a period of less than thirty days without giving a trial satisfying the requirements of due process. It should be added that in the *Steinkellner Case,* it was held that after the passage of the act the chief retained all powers that were not taken away from him by the act, and since the act limits his power to discharge and suspend, only as indicated in the three subsections above discussed, it follows that ordinary disciplinary powers not limited by the act are retained by the chief as necessary and incidental to the discharge of his duties. This conclusion in no way affects the tenure of the members of the department. The power of the chief to apply summarily temporary and minor disciplinary measures in case of minor offenses is obviously necessary to the discipline of the department and does not affect a property right of the member so disciplined. In *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595, this court carefully distinguished between an office held subject to summary right of removal for cause satisfactory to the removal officer or tribunal and an office having the incidents of a fixed term, subject to be terminated for due cause or some particular cause required to be established by proof. This, of course, is much broader than is necessary to justify the conclusions of the trial court. If the legislature may, as indicated in the *McGovern Case, supra,* and in *State ex rel. Ballard v. Goodland,* 159 Wis. 393, 150 N. W. 488, provide for summary removal without charges and without hearing as to particular offices it may with much clearer justification provide for summary disciplinary suspensions of a minor and temporary character.

We now come to the contention that the rules of the department for the violation of which petitioners were suspended are invalid as infringing upon the constitutional right of free

speech. . It will be well before discussing this point to consider the rules that are in question. Sec. 13, rule 29, provides:

*"Suggestions for improvements.* Suggestions for the improvement of the department or the well-being of the men shall, when presented through the regular channels, be gladly received and carefully considered."

Sec. 30, rule 29, provides:

*"Department information.* No information relative to the business or affairs of the fire department shall be furnished persons not connected therewith, except as authorized by the chief engineer."

Sec. 16, rule 33, prohibits insubordination or disrespect toward a superior officer. Sec. 21, rule 33, prohibits publicly criticizing the official action of a superior officer. There can be no question that the publications violated the rules of the department in that they gave information concerning the department to persons unconnected therewith, and constituted insubordination and disrespect toward a superior officer.

It is not entirely clear to us that the constitutional right of free speech is involved at all in this case. If it is, then the question is where the reasonable regulation of the right of free speech in the interest of discipline ends and unconstitutional interference with it begins. However, at the outset, we call attention to the nature of the public department of which petitioners are members. It is what might loosely be called a "semimilitary" organization where discipline is of the greatest importance and where unified action is essential. The rules of the department regulating its discipline have existed for years. They have a reasonable relation to the needs of the department and the department itself is a very powerful factor in public safety. It can strongly be argued that acceptance of employment in such department involves acceptance of the disciplinary regulations adopted by the department and

precludes a later objection to the character of any particular regulation. However, we prefer not to put this case upon this point.

Assuming that the question of interference with the constitutional right of free speech is involved, it is our opinion that there is nothing more here than a reasonable regulation of the right in the interests of departmental discipline. Considered as a whole, the rules simply require that complaints must come through the regular channels. They may be made to the chief, even though the matter involves his own conduct; they may also be made to the board of police and fire commissioners without insubordination. It seems to us entirely reasonable that so long as there are outlets for complaints the discipline of the department be maintained by avoiding public controversies between the subordinates of the department and their chief. Any other rule would tend to destroy the discipline of the department, and it seems to us that regardless of the rule prohibiting giving information outside the department the indulgence in public criticism such as is involved here in advance of any attempt to have the grievances settled within the department is an act of insubordination and is subversive of discipline.

The foregoing conclusions are enough to decide this case, and we see no reason to speculate on extreme situations which might with more force be argued to interfere with the constitutional right of free speech. For example, if there was a complete cloture in such a way as to make it impossible for the employee ever to bring to the attention of the public a matter concerning the operation of the department, we might have a different question, although we need not decide here whether it is sufficiently different to require a different result.

In view of some of the cases cited by petitioners we deem it proper to make a further observation. We recognize that there may be two distinct causes of dissension within a police or fire department. The first type of dispute may have to do

with matters affecting the general policy of the department as it affects the public interest.    In this class of cases, since the policies of the department are within the control of the chief and the board of police and fire commissioners, the limitations upon outside discussion may, of course, be more extensive and severe.    The subject matter of the dispute, however, may have to do with the relations of the members of the department to the board as employees, and there it may be urged with considerable force that cases such as *Thornhill v. Alabama,* 310 U. S. 88, 105, 60 Sup. Ct. 736, 84 L. Ed. 1093; *American Federation of Labor v. Swing,* 312 U. S. 321, 61 Sup. Ct. 568, 85 L. Ed. 855, which hold that employees have a constitutional right to publicize the facts of a labor dispute, have operation and application.    However, it is our conclusion that there is no labor dispute within any police or fire department until grievances have been presented to the chief and to the board of police and fire commissioners, and at least until that event has happened, there is nothing to be publicized and prohibition against public expressions of disagreement may properly be enforced in the interests of discipline and morale.    It is not necessary to make any further determination at this time.    What is here said is not to be extended beyond the calls of this case.

*By the Court.*—Judgment affirmed.