Huhnke, Appellant, vs. Wischer, Chief Engineer, and another, Respondents.

*October 10—November 8, 1955.*

68

For the appellant there was a brief by *Max Raskin,* and oral argument by *Mr. Raskin* and *Mr. Leonard Zubrensky,* both of Milwaukee.

For the respondents there was a brief by *Walter J. Mattison,* city attorney of Milwaukee, and *Alan H. Steinmetz,* assistant city attorney, and oral argument by *Mr. Steinmetz.*

MARTIN, J.    Appellant first presents the question whether the common council of the city of Milwaukee is empowered to enact sec. 2–156 of the Milwaukee Code of Ordinances.

He calls attention to sec. 3, art. XI of the Wisconsin constitution by which municipalities are empowered "to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature." He cites *Van Gilder v. Madison* (1936), 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, in

which this court held that fire protection is a matter of state-wide concern and the power of a municipality to deal with the subject must be derived from the legislature through legislative enactment.

Sec. 62.11 (5), Stats., sets forth the powers of the common council of the city of Milwaukee as follows:

"Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the *public service,* and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language." (Emphasis supplied.)

There can be no question that by this section the legislature has empowered the common council to enact ordinances for the management and control of fire-department employees, including such an ordinance as sec. 2–156. Appellant's position is that ch. 586, Laws of 1911, creating the board of police and fire commissioners, explicitly removed from the common council all power to regulate its fire and police departments. We cannot agree. That chapter requires the board of police and fire commissioners to adopt rules and regulations governing the qualifications of police and firemen and to provide for competitive examinations, but there is no express language anywhere in the act which limits the power of the common council under sec. 62.11 (5), Stats., to prohibit outside employment of firemen.

It is likewise contended that the chief engineer of the fire department possessed no power to promulgate Rule 28, sec. 23, quoted above. The chief engineer derives his power from sec. 23 of ch. 586, Laws of 1911:

"The chief engineer of the fire department and the chief of police of said cities shall be the head of their respective departments and shall have power to regulate said departments and prescribe rules for the government of its members. . . ."

*State ex rel. Curtis v. Steinkellner* (1945), 247 Wis. 1, 8, 18 N. W. (2d) 355, cited by the appellant, does not support his contention that the chief engineer had no power to make the rule in question. That case dealt with entirely different rules. However, the following language there used is significant:

". . . we call attention to the nature of the public department of which petitioners are members. It is what might loosely be called a 'semimilitary' organization where discipline is of the greatest importance and where unified action is essential. The rules of the department regulating its discipline have existed for years. They have a reasonable relation to the needs of the department and the department itself is a very powerful factor in public safety. It can strongly be argued that acceptance of employment in such department involves acceptance of the disciplinary regulations adopted by the department and precludes a later objection to the character of any particular regulation."

Primarily, appellant's position is that the chief had no power to make the rule because it has no relation to the service of the department, and that brings us to a discussion of the final contention—that the rule, as well as the ordinance, is invalid because unreasonable.

It is conceded that the rule and the ordinance must bear a rational relationship to the maintenance of an efficient fire department. One of the reasons for the rule is to insure that members of the department will be at all times in physical condition to perform their duties as firemen if called upon to perform them. A fireman is subject to call for duty twenty-four hours a day; he is potentially on duty at all times during his off hours. It may be, as appellant argues, an interference

with the privacy of the members to deny them the right to spend their off time as they see fit; but that is not the question here. If the rule is harsh, it is for the individual to determine whether he will subject himself to its terms by becoming a member of the department. The right to work for the public is a privilege which may be granted on any conditions which the public agency may impose consistent with the law and public policy, 5 McQuillin, Mun. Corp. (3d ed.), p. 535, sec. 19.23, and when an individual enters such employment he impliedly surrenders certain natural rights which would remain his if he were a private citizen, *Steiner v. Darby* (1948), 88 Cal. App. (2d) 481, 199 Pac. (2d) 429.

We see no unreasonableness in the ordinance and rule. This court has not previously had occasion to pass upon the question, but appellate courts in other jurisdictions have. In *Bell v. District Court of Holyoke* (1943), 314 Mass. 622, 623, 624, 51 N. E. (2d) 328, where a similar rule was before the court, it was said:

"The nature of the duties assumed by a member of a fire department is such that it cannot be anticipated when he will be called upon to assist in the extinguishment of fires. He is actually on duty at certain hours, but he is potentially on duty whenever the emergency arises that calls for his services. Even when 'at liberty' under the platoon system he is subject to be summoned in case of a conflagration and kept 'on duty . . . while the conflagration continues.' . . . It has been held that the liberty to which a fireman is entitled under this section while off duty is not absolute, . . .

"A fireman in the active service of a city must keep himself in good physical condition for the arduous tasks and probable dangers that may be encountered in the performance of his duties. . . . [Petitioner's] principal calling so far as the citizens of Holyoke were concerned was that of a fireman, and he would not have any right to consider his position as a fireman as incidental to another occupation in private

industry in which he had embarked or to permit this outside work to impair his faculties or lessen his ability properly to perform his duties as a fireman."

In *Reichelderfer v. Ihrie* (D. C. 1932), 59 Fed. (2d) 873, 874, the court said of such a rule:

"It proceeds upon the theory that a fireman cannot 'devote his entire attention' to the service of the fire department, and at the same time engage in outside employment for wages. We think the regulation is reasonable. It tends to prevent firemen from dividing their strength as well as their interest and attention between their departmental duties and outside pursuits."

In *Calfapietra v. Walsh* (1944), 183 Misc. 6, 7, 8, 10, 49 N. Y. Supp. (2d) 829, in considering the rule that a fireman "shall not . . . engage in another business or occupation," the court said:

"Accordingly, since it is the duty of the fire commissioner to prevent and extinguish fires and protect life and property at any place within the city, it would seem that he has power, under charter, sec. 885 (*supra*), to promulgate a rule prohibiting outside employment, if such a rule is essential for the efficient conduct of the fire department and reasonably necessary to carry out his powers and duties. . . .

". . . as has been wisely remarked, conflagrations wait on no man. For that reason, a fireman is potentially on duty at all times. He is obliged to answer alarms even when off duty. To be efficient, he must at all times be in good physical condition. . . . Moreover, if one member of the force were permitted to accept outside employment, the same privilege would have to be extended to others. The result, if the practice became widespread, might be disastrous. . . .

". . . when one seeks a position as fireman he must, in the very nature of his employment, subordinate, to the extent necessary to accomplish the end sought, rights which are personal to the commonweal."

The trial court properly held that both the ordinance and the rule are reasonable and valid.

*By the Court.*—Judgment affirmed.