[Civ. No. 22829.   First Dist., Div. Three.   Nov. 17, 1966.]

CLAUDE T. BELSHAW, Plaintiff and Respondent, v. THE CITY OF BERKELEY et al., Defendants and Appellants.

494

Robert T. Anderson, City Attorney, and Robert P. Berkman, Assistant City Attorney, for Defendants and Appellants.

Marshall W. Krause and Albert M. Bendich for Plaintiff and Respondent.

SALSMAN, J.—Respondent, Claude T. Belshaw, petitioned the superior court for a writ of mandate directing appellants, the City of Berkeley, the Personnel Board of Berkeley, and each member individually, and the City Manager of Berkeley, to vacate and expunge from the city's records respondent's 30-day suspension from the Berkeley Fire Department and to pay respondent the salary which would have been due him had he not been suspended. An answer to the petition was filed and after a hearing, the case was submitted. The trial court concluded that rules allegedly violated by respondent were unenforceable in that they infringed upon his constitutional rights, and were so vague and overbroad in their application as to deprive him of due process of law. The court granted a peremptory writ of mandate requiring appellants to vacate and expunge from its records the suspension of respondent

and entered judgment in his favor for the salary he would have received had he not been suspended.

The record shows that respondent wrote a letter on the subject of a salary distinction between beginning policemen and firemen, and submitted the letter to the Berkeley Daily Gazette. It was published in the "Open Forum" section of that newspaper a few days later.[1] After respondent's letter appeared in the newspaper he received a letter from the city manager notifying him of his suspension on the ground that his conduct in writing the letter and submitting it to a newspaper for publication violated sections of the Personnel Rules and Regulations of the Berkeley Fire Department.[2]

The rules appellants assert were violated by respondent were first, rule 20, section 2 of the Personnel Rules and Regulations, which reads: "Employees are required at all times to conduct themselves in such a manner as to reflect no discredit upon the City of Berkeley"; and second, rule 31 of chapter 20 of the Berkeley Fire Department Rules and Regulations, which states: "Public Criticism of Department or Superiors— They shall refrain from adverse criticism concerning the actions of any superiors and they shall not publicly express disapproval of the policies and practices of the Department."

Respondent demanded a hearing on the charges against him. A hearing was held and the personnel board sustained the action of the city manager.

---

[1] The letter read as follows: "As a citizen, a taxpayer and a Berkeley fireman for 20 years I realize that the Berkeley Police Department must be laughing up their sleeve now that they have fooled the City Manager, the Personnel Department and the City Council. The Berkeley Police Department have created a situation for their own benefit. They continue to hire men with A.B. and M.A. degrees and graduates of law school. How long will these men stay in the Berkeley Police Department? It occurs to me that if they took a look into their Department they could find a better solution to their problem than the $30 to $122 (with overtime) a month pay increase voted to them by the City Council. Why could they not rotate their shifts so that younger men could work some days instead of all nights? I think the people would feel a little safer if there were more experienced men assigned to night duty as this is the time when most of the serious crimes occur. It is understood that even with the additional pay voted to them one police officer has already handed in his resignation and two more are expected to do the same in the very near future. Many citizens recognize the effort put forth and the excellent job that the Berkeley Fire Department is doing for them. I hope these citizens will also realize the inequity that has been created between the Berkeley Fire Department and the Berkeley Police Department and that something will be done to change the situation."

[2] Other grounds for suspension were also recited in the city manager's letter. Alleged violations of various cited rules of the Berkeley Fire Department were stated. These charges were not sustained by the city in proceedings before the city's personnel board.

496

The superior court found that respondent's letter was not "offensive per se"; that it was not defamatory or obscene, did not urge or suggest violent or unlawful action on the part of anyone, and finally that there was no evidence before the court from which it could be found that respondent's letter or conduct "constituted any disruption or impairment of discipline within the Fire Department of the City of Berkeley . . . or a violation of any valid . . . rule . . . of the City. . . ."

On appeal appellants contend that respondent's conduct in writing the letter and submitting it to a newspaper for publication violated rules of the City of Berkeley in that it reflected discredit upon the city (section 2, rule 20, personnel rules) and amounted to adverse criticism concerning the actions of his superiors (chapter 20, rule 31, fire department rules). Respondent, on the other hand, contends that the rules are unconstitutional in that they deny him the right of free speech. (U.S. Const., First Amendment; Cal. Const., art. I, § 9.) We have concluded that it would be an unconstitutional deprivation of freedom of speech to apply the cited rules to respondent on the facts in the record before us.

It is clear that a municipal corporation, such as appellant city, may make and enforce reasonable rules concerning the conduct of its employees. (*Board of Education* v. *Swan,* 41 Cal.2d 546, 556 [261 P.2d 261]; *Hayman* v. *City of Los Angeles,* 17 Cal.App.2d 674, 679 [62 P.2d 1047]; Annotation "Governmental control of actions or speech of public officers or employees, etc.", 163 A.L.R. 1358; see also *United Public Workers* v. *Mitchell,* 330 U.S. 75 [91 L.Ed. 754, 67 S.Ct. 556].) Generally speaking, the purpose of such rules and regulations is to maintain order and discipline among the employees, and to advance and improve the public service. While it has been held that one employed in the public service does not have a constitutional right to such employment (*McAuliffe* v. *Mayor etc. of City of New Bedford,* 155 Mass. 216 [29 N.E. 517, 518]; *Board of Education* v. *Swan, supra,* 41 Cal.2d 546) it is also settled that one cannot properly be barred or removed from public employment arbitrarily or in disregard of his constitutional rights. (*Fort* v. *Civil Service Com.,* 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 392 P.2d 385], and cases cited.)

The right to free speech and the privilege of public employment are not incompatible, nor are they mutually exclusive. The acceptance of public employment does not demand abandonment of constitutionally protected rights. With respect to the constitutional right of free speech, the rule

is, and should be, that a public employee may speak freely, as long as he does not impair the administration of the public service in which he is engaged. (*City of St. Petersburg* v. *Pfeiffer* (Fla.) 52 So.2d 796.) Recent cases support this conclusion. (*Board of Trustees* v. *Owens,* 206 Cal.App.2d 147, 157 [23 Cal.Rptr. 710].) In *Fort* v. *Civil Service Com., supra,* 61 Cal.2d 331, our Supreme Court struck down broad provisions of the Alameda County charter which prohibited political activity on the part of county officers and employees. The court said (pp. 337-338) : ''The principles set forth in the recent decisions do not admit of wholesale restrictions on political activities merely because the persons affected are public employees, particularly when it is considered that there are millions of such persons. It must appear that restrictions imposed by a governmental entity are not broader than are required to preserve the efficiency and integrity of its public service.'' (See also *Kinnear* v. *City & County of San Francisco,* 61 Cal.2d 341 [38 Cal.Rptr. 631, 392 P.2d 391].)

What was said in *Fort* concerning the political rights of public employees has equal application to the right of free speech, as the facts of this case demonstrate. Here a broad rule of employee conduct prohibits all criticism of superiors and prevents public expression of disapproval of the policies of respondent's department. Even if it be admitted that the comments contained in respondent's letter were in fact critical of his superiors, there is no showing here that its publication impaired or disrupted the public service. We thoroughly agree with the trial court's finding that respondent's letter is not offensive, defamatory or obscene, and that it does not urge or suggest violent or unlawful conduct on the part of anyone. Moreover, appellants virtually concede that the statements in the letter could properly have been made by respondent at public hearings where the proposed salary differential between firemen and policemen was initially discussed.

The city's reliance upon *Pranger* v. *Break,* 186 Cal.App.2d 551 [9 Cal.Rptr. 293] does not aid it. There a public employee published a critical editorial expressing his views concerning a salary dispute. But Pranger's comments were quite different in tone and content from Belshaw's, and in fact could be read as calling for a sit-down or strike, or other unlawful pressures to remedy the situation he described in his editorial. As the court pointed out (p. 556), public employees in general do not have a right to strike against the government (*Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen,*

54 Cal.2d 684, 687 [8 Cal.Rptr. 1, 355 P.2d 905]; *Newmarker* v. *Regents of University of Cal.*, 160 Cal.App.2d 640 [325 P.2d 558]; *City of Los Angeles* v. *Los Angeles etc. Council,* 94 Cal.App.2d 36 [310 P.2d 305]) and hence Pranger's call for illegal action was clearly conduct unbecoming a public employee. Obviously, also, it was conduct likely to impair the administration of the public service to which he was attached (*City of St. Petersburg* v. *Pfeiffer, supra,* 52 So.2d 796; *Board of Trustees* v. *Owens, supra,* 206 Cal.App.2d 147) and as such had no constitutional protection.

We conclude that the comments made by Belshaw represent nothing more than an exercise of his constitutionally protected right of free speech, for which, in the absence of a showing that his conduct impaired the public service, he could not properly be punished under the personnel rules of the city or the rules of the fire department.

Judgment affirmed.

Draper, P. J., and Devine J., concurred.