DONALD E. KLEIN et al., appellants, v. CIVIL SERVICE COMMISSION OF CEDAR RAPIDS, IOWA, appellee.

No. 52552.

(Reported in 152 N.W.2d 195)

JULY 11, 1967.

Robert C. Nelson, of Cedar Rapids, for appellants.

David McGuire, of Cedar Rapids, for appellee.

MOORE, J.—In this certiorari action plaintiffs, three Cedar Rapids firemen, contend an order of the Civil Service Commission sustaining their suspension by the fire chief for disobedience of departmental rules exceeds the commission's jurisdiction or is otherwise illegal. From judgment annulling the writ and dismissing the petition at plaintiffs' costs, they have appealed.

At the time of their disciplinary suspensions plaintiffs, Charles G. Schmitt, Donald Klein and Gordon R. Scott, were civil service employees in the Cedar Rapids fire department. They had been so employed for several years. They were also members of Local No. 11 of the Cedar Rapids Fire Fighters Association. Klein was president and Schmitt was chairman of the negotiating committee of Local No. 11.

Following a meeting of Local No. 11, Schmitt, on August 5, 1964, while at fire station No. 9 prepared for release a news bulletin which we will set out infra. This release was distributed by Klein and Scott to various members of the Cedar Rapids news media and in turn given much publicity.

Upon learning of this release and after interviewing the three firemen involved, Jesse G. Hunter, Chief of the Cedar Rapids Fire Department, suspended each of them for 90 days without pay. The suspensions were for disobedience of orders as authorized in Code section 365.19 and particularly for violation of rules 23 and 34 of the fire department rules.

Rule 23 provides: "All matters pertaining to or affecting the Department proposed or contemplated by members must be submitted to the Chief for approval and action."

Rule 34 provides: "No member of the Department shall give out any information relative to the Department, its operations, equipment and so forth unless permission by the Chief has been granted."

Upon notification of the suspensions each of the men appealed to the Civil Service Commission under the provisions of chapter 365, Code 1962.

On October 30, 1964, hearing before the commission culminated in an order confirming Schmitt's suspension for the 90-day period. Klein's suspension was confirmed but the period reduced to 60 days. Scott's suspension was also confirmed but the period reduced to 30 days.

Upon filing of plaintiffs' petition for writ of certiorari it was issued and all records of the commission, including the transcript of evidence, were duly certified to the Linn District Court. They have likewise been certified to this court.

On this appeal from the adverse ruling and judgment of the trial court plaintiffs argue, (1) the writ lies to review a ruling of an inferior tribunal where its error is manifest and substantial injury has been sustained by petitioner, (2) plaintiffs' constitutional rights of free speech were violated by the commission in applying the departmental rules and the commission acted illegally where no substantial evidence existed and (3) an oral or written order forbidding firemen, under penalty of discipline, to make statements of any kind is so broad in scope and rigid in terms that enforcement thereof is arbitrary, unreasonable and capricious.

I. "A writ of certiorari shall only be granted when specifically authorized by statute; or where an inferior tribunal, board or officer, exercising judicial functions, is alleged to have exceeded its, or his proper jurisdiction or otherwise acted illegally." Rule 306, Rules of Civil Procedure.

██ ██ Certiorari is not, and was never intended to be, a trial de novo, as on appeal. Such is not the office of the writ. We have repeatedly held the writ presents only a question of law and does not entitle a petitioner to have the facts reviewed. Pierce v. Green, 229 Iowa 22, 49, 50, 294 N.W. 237, 253, 131 A. L. R. 335, and citations; City of Iowa City v. White, 253 Iowa 41, 48, 49, 111 N.W.2d 266, 270.

In Hohl v. Board of Education, 250 Iowa 502, 508, 509, 94 N.W.2d 787, 791, we say: "Certiorari is the method of bringing the record of an inferior tribunal before the court for the purpose of ascertaining whether the inferior tribunal or body had jurisdiction and whether its proceedings were authorized. See 19 Iowa Law Review 467. Clearly it comes within the supervisory functions of the appellate courts and is necessary to keep all such bodies within their proper functions and to prevent them from acting in an illegal manner."

Plaintiffs contend the commission acted illegally in violation of their constitutional rights of free speech and its enforcement of unreasonable departmental rules was arbitrary, capricious and therefore illegal.

II. With these principles of law and plaintiffs' contentions

in mind we return to the facts as disclosed by the record made before the commission.

Rules 23 and 34 were included in the Rules and Regulations of the Cedar Rapids Fire Department published in book form effective January 5, 1933, and also on July 1, 1963, and remained unchanged since 1933. Each publication shows approval of the rules by the City Council, Superintendent of Public Safety and the Chief of the Fire Department. Rules 23 and 34 were in full force and effect prior to and at all times during plaintiffs' service as city firemen.

Each plaintiff as he joined the fire department was given instruction regarding all rules and was required to pass an examination showing full knowledge thereof. All admitted such knowledge. No complaints about rules 23 and 34 were ever asserted by plaintiffs. These rules had been complied with by officers and members of Local 11 at all times prior to plaintiffs' admitted violation thereof.

On June 16, 1964, the following news bulletin was released on stationery of Local 11, signed by Schmitt as chairman and three other members of the negotiating committee, addressed to several members of the Cedar Rapids news media:

"On November 21, 1963, it was released through the news media in Cedar Rapids, Iowa, that beginning January 1st, 1964, Cedar Rapids Fire Fighters would go on a 56 hour work week.

"We wish, at this time, to inform you and the public that this has failed to materialize although the suggested increase in manpower has been accomplished."

Three days later, June 19, another news release was made on Local 11 stationery but signed only by Schmitt as chairman of the negotiating committee. It was addressed to members of the Cedar Rapids news media and also the Des Moines Register. It stated:

"According to news reports of today, the Cedar Rapids City Council and the Cedar Rapids City Lines Bus Company have decided to take away the privilege of Police Officers and Professional Fire Fighters free transit on inner city buses and carriers.

"I do not question the motive here present, but I do feel that it is my duty as chairman of the negotiating committee for

the Professional Fire Fighters to protect the rights of our men. This special privilege is granted by State Law to Police and Fire Personnel under Section 368A.23 of the State Fire Laws Revised 1962.

"Very few of our men take advantage of the privilege, but we must protect the rights of the few as well as the majority."

Following these releases Fire Chief Hunter called a meeting of the assistant fire chiefs and certain members of Local 11 including Schmitt and Klein at which time rules 23 and 34 were discussed and those present warned not to make news releases regarding departmental affairs without first getting approval of the chief. It was made clear Local 11 was not required to get his approval of news releases regarding strictly and only union business such as election of officers and social events of Local 11 but that news releases relative to departmental affairs were to be submitted to the chief for his approval. Chief Hunter advised those present "that anything pertaining to working conditions, wages, and so forth, was definitely a part of the operation of the Fire Department—And in fact it runs about ninety-four per cent of my budget, so it definitely is a real part of the operating department of the Fire Department." He told them everything pertaining thereto must clear his office. Chief Hunter and Assistant Chiefs testified an agreement for full compliance with rules 23 and 34 was made by those present.

On July 30, 1964, Schmitt as chairman of Local 11's negotiating committee directed the following letter to Chief Hunter at the Central Fire Station:

"Re: Previous request to Chief Hunter to set up a meeting with the City Council to negotiate wages and fringe benefits.

"On or about July 1st the Negotiating Committee met with Chief Hunter and requested him to arrange a meeting between the City Council and the committee to negotiate adjustments in wages for the coming year.

"To date this meeting has not been granted the committee and we would, at this time, like to renew our request."

Upon receiving that letter Chief Hunter took action as is shown by his letter addressed to Schmitt as Chairman of the negotiating committee dated August 3, 1964. It stated:

"Dear Charles: Your letter of July 30th, requesting me to arrange a meeting between the City Council and the negotiating committee has been received.

"On Saturday Aug., 1st., I contacted Commissioner Frank Bosh by telephone requesting a meeting.

"He informed me that he would like to gather some information and data to present at the meeting when it would be held and would let me know in the next few days when the meeting could be arranged.

"As soon as this has been accomplished I will be happy to inform you.                              Sincerely yours,

"Jesse G. Hunter, Chief of Fire Dep't."

The same day, August 3, Schmitt phoned Chief Hunter and obtained permission to trade time with another fireman so Schmitt could attend the meeting of Local 11 which permission was granted. During that conversation Hunter advised Schmitt of the arrangements made with Bosh and that he had put the above letter in the mail.

On August 5, 1964, Schmitt, at Fire Station No. 9, prepared and delivered to Klein and Scott for distribution to members of the news media the following:

"PROFESSIONAL FIRE FIGHTERS, LOCAL 11, CEDAR RAPIDS, IOWA

"RE: Outcome of special union meeting

"To all news media—for immediate release.

"DON KLEIN President    CHUCK SCHMITT Chairman Neg. Comm.
home phone 362-3043    home phone 362-6706

"The negotiating committee of Local 11 has been completely ignored in their attempts to negotiate with the commissioner of public safety and the city council on wages and fringe benefits for the coming year.

"On June 24, 1964, our askings were presented to the city council, city clerk, personnel director and the chief of the fire department in letter form. On June 25, 1964, these letters were returned with the exceptions of those sent to the personnel director and the chief of the fire department, along with a letter of refusal signed by Commissioner Bosh.

"On June 29, 1964, a representative of Local 11 resubmitted

a copy of our askings to the city clerk to be clocked and placed on file for public record.

"As a result of the release of the proposed budget of 1965, grossly underpaying fire fighters, and the failure of the council to negotiate, the following motions were passed at our special meeting.

"I. To retain legal counsel immediately,

"II. To voice opposition to the proposed budget of the department of public safety, specifically that part pertaining to the fire department, at the public hearing August 12, 1964, unless our askings are granted in full before this date.

"The executive board of Local 11 was instructed by a vote of an overwhelming majority of all members, to prepare this news release on the material here included. We will carry out the wishes of our members.     The Executive Board of Local 11

"Association of Professional Fire Fighters of Cedar Rapids, Iowa."

Chief Hunter first learned of this news release upon its publication. Schmitt, Klein and Scott were immediately called before the chief and the assistant chiefs of the department where each admitted his part in its preparation and release.

Scott's admissions included a statement he realized the news release was against the rules and regulations and that rules and regulations were necessary for the operation of the fire department.

At the conclusion of this interview with plaintiffs and a conference with the assistant chiefs who unanimously recommended 90 days suspension for each of the three firemen, Chief Hunter made such an order. It was made on the basis of disobedience as outlined in Code section 365.19 by violation of departmental rules 23 and 34.

Chief Hunter's testimony before the commission includes:

"Q. Now, Chief Hunter, would you state in your opinion as Chief of the Fire Department, and as a career fire fighter, whether or not rules and regulations are necessary for a fire department, and whether or not it is necessary in your opinion to require compliance and obedience to such rules and regulations? A. It is my opinion that any good organization must

have rules and regulations. And more especially a fire department, because we are organized as a semi-military organization, so to speak. When orders are given they must be implicitly obeyed. It might mean life or death to someone, or the destruction of property, if they are not followed out."

Several of the assistant chiefs gave like testimony.

Klein testified before the commission he considered wages and budget as fire department business. None of the plaintiffs contended they were strictly and only union affairs.

III. This court has not heretofore passed squarely upon the question of governmental control of actions or speech of public employees in respect to matters outside the actual performance of their duties. It has, however, come to the attention of courts in other jurisdictions and is the subject of an annotation in 163 A. L. R. 1358.

McAuliffe v. Mayor, 155 Mass. 216, 220, 29 N.E. 517, on which the trial court strongly relied, seems to be the early landmark case in this area of the law. In that case the court approved discharge of a city policeman for disobedience of a departmental rule prohibiting soliciting money for political purposes and becoming a member of a political committee. The court held the rule was not open to constitutional or statutory objection and that it was reasonable.

Justice Oliver Wendell Holmes speaking for the court at pages 517, 518, states: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as of idleness by implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same principle the city may impose any reasonable condition upon holding offices within its control. This condition seems to us reasonable, if that be a question open to revision here."

Since the McAuliffe case (1892) many opinions have been written upholding the constitutionality of statutes, rules and regulations limiting the actions and words of employees of various branches of government. Included are those approving the

reasonableness and constitutionality of the Hatch Political Activities Act. United Public Workers v. Mitchell, 330 U. S. 75, 67 S. Ct. 556, 91 L. Ed. 754; Oklahoma v. United States Civil Serv. Comm., 330 U. S. 127, 67 S. Ct. 544, 91 L. Ed. 794. See also annotation, 91 L. Ed. 787.

The general rule is now well established that one employed in public service does not have a constitutional right to such employment and is subject to reasonable supervision and restriction by the authorized governmental body or officer to the end that proper discipline may be maintained, and activities among the employees may not be allowed to disrupt or impair the public service. State ex rel. Curtis v. Steinkellner, 247 Wis. 1, 18 N.W.2d 355; Kane v. Walsh, 295 N. Y. 198, 66 N.E.2d 53, 163 A. L. R. 1351; Riley v. Board of Police Commrs. of City of Norwalk, 147 Conn. 113, 157 A.2d 590; DeGrazio v. Civil Service Comm. of City of Chicago, 31 Ill.2d 482, 202 N.E.2d 522; McAuliffe v. Mayor, 155 Mass. 216, 29 N.E. 517; Flood v. Kennedy, 12 N.Y.2d 345, 239 N. Y. S.2d 665, 190 N.E.2d 13; Hayman v. City of Los Angeles, 17 Cal. App.2d 674, 62 P.2d 1047; Board of Education of City of Los Angeles v. Swan, 41 Cal.2d 546, 261 P.2d 261; Belshaw v. City of Berkeley, 246 Cal. App.2d 493, 54 Cal. Reptr. 727; Annotation, 163 A. L. R. 1358.

IV. The real and decisive question in the case at bar may be pinpointed to the inquiry of whether the regulations established by rules 23 and 34 are reasonable and necessary for proper departmental discipline and protection of public service. Some dissension in a fire department is certain to arise. It is a semi-military organization. Disciplinary rules to avoid adverse effects to public interest are necessary. Flood v. Kennedy, 12 N. Y.2d 345, 239 N. Y. S.2d 665, 190 N.E.2d 13; DeGrazio v. Civil Service Comm. of City of Chicago, 31 Ill.2d 482, 202 N.E.2d 522; State ex rel. Curtis v. Steinkellner, 247 Wis. 1, 18 N.W.2d 355.

The purpose of such rules and regulations must be to maintain order and discipline among the employees and to advance and improve the public service.

The record, which we have set out perhaps in greater detail than necessary, clearly establishes the news releases relate only

to attempts by Local No. 11, its officers and members to obtain better hours, wages and fringe benefits. There is not the slightest proof plaintiffs' conduct impaired the administration of the public service of which they were a part.

■ V. Generally speaking, employees have a right to publicize the facts of a labor dispute. Thornhill v. Alabama, 310 U. S. 88, 60 S. Ct. 736, 84 L. Ed. 1093; American Federation of Labor v. Swing, 312 U. S. 321, 61 S. Ct. 568, 85 L. Ed. 855; Annotation, 93 L. Ed. 1184. In absence of proof of impairment of the administration of public service, this rule applies to public employees. Belshaw v. City of Berkeley, 1966, 246 Cal. App.2d 493, 54 Cal. Rptr. 727, 730, 731, and citations; City of St. Petersburg v. Pfeiffer, Fla., 52 So.2d 796.

■ VI. We conclude the news release of August 5, 1964, by plaintiffs represented nothing more than an exercise of their constitutionally protected right of free speech regarding a labor dispute for which, in the absence of a showing of impairment of public service, they should not have been punished.

To the extent rules 23 and 34 authorize such punishment they are too broad, rigid and unreasonable. Under the facts their enforcement was arbitrary and capricious and therefore illegal.

We hold defendant-commission acted illegally and the judgment of the trial court must be reversed.

The writ of certiorari is sustained. Suspension of plaintiffs should be set aside and compensation for the period thereof made.—Reversed and remanded.

LARSON, RAWLINGS, BECKER and MASON, JJ., concur.

STUART, J., GARFIELD, C. J., and SNELL, J., dissent.

STUART, J.—I respectfully dissent. The majority states the real and decisive question to be: "Whether the regulations established by rules 23 and 34 are reasonable and necessary for proper departmental discipline and protection of public service." I do not agree.

In my opinion the real and decisive question is whether fire department employees can intentionally violate rules and regu-

lations of which they have full knowledge and deliberately disobey the order of the fire chief to comply with these rules and defend their action by claiming the rules were arbitrary and capricious. I think not.

These rules were in effect long before these petitioners were employed. They had to pass an examination showing full knowledge thereof. Obedience to the rules was a condition of their employment. The rules were violated twice in June 1964 before the fire chief called a meeting, discussed them and warned petitioners to get his approval before making any more news releases. They made no attempt to get his approval of the August 5 news release and admittedly violated the rules and the fire chief's order.

It is conceded a fire department is and must be a semi-military organization. Firm discipline and prompt obedience to orders are of utmost importance if it is to perform its services safely and efficiently. In spite of the present attitude of some which accept civil disobedience as a proper form of protest, it surely cannot be acceptable in this situation. The holding here encourages disobedience and insubordination. Is each fireman to have the right to determine in his own mind whether a given rule or order is arbitrary and capricious before deciding whether to obey it? It can only contribute to a breakdown in discipline and morale which could have very unfortunate results.

I agree firemen should have the right to take wage problems to the public. I do not quarrel with the finding that the interpretation of the rules was arbitrary. These conclusions, however, do not justify the conduct of these petitioners. The rules or interpretation should have been attacked by proper proceedings before the civil service commission or declaratory judgment action, if necessary. I cannot approve of this method of "self-help".

GARFIELD, C. J., and SNELL, J., join in this dissent.