GEORGE D. MARR *v.* CITY OF FORT SMITH, ARKANSAS

73-210                              501 S.W. 2d 777

Opinion delivered December 10, 1973

*Pearce, Robinson & McCord,* for appellant.

*Daily, West, Core & Coffman,* for appellee.

J. FRED JONES, Justice. George D. Marr, a member of the Fort Smith Fire Department, was suspended from duty for a period of fifteen days without pay for violation of chapter 10, §§ 16 and 30, paragraph J, of the fire department rules and regulations. On appeal to the Civil Service Commission the suspension was approved for violation of § 16 of the rules, and on appeal to the circuit court the decision of the Commission was affirmed. On this appeal from the circuit court judgment, Mr. Marr

contends that he did not violate the rules and regulations of the fire department and also contends that the rule he is alleged to have violated is unconstitutional as applied to his actions in violation of his First Amendment rights. We shall not discuss the substantiality of the evidence pertaining to the alleged violation because we agree with Mr. Marr as to his second contention.

Section 16 of chapter 10 of the fire department rules and regulations reads as follows:

"Members that have any matter that pertains to the Fire Department and to be taken up with any City Official shall first submit the same to his superior officer and the matter shall be handled thereafter through the chain of responsibility."

As background for Mr. Marr's alleged rule violation, it appears that the board of directors of the City of Fort Smith had passed an ordinance pertaining to overtime pay and optional "equalization" pay in lieu of legal holidays, and it appears there was considerable difference of opinion among the firemen, as well as others, as to the method to be employed in calculating the equalization pay for firemen under the provision of the ordinance. It appears that Mr. Marr was dissatisfied with the results of the method being employed under the provisions of the ordinance and so advised two of the city directors by telephone, as well as his Congressman in Washington and the Governor of the state by letters, without first submitting the matter to his superior officer in the fire department, so that the matter could be handled thereafter through the chain of responsibility under the provisions of § 16 of chapter 10, *supra.*

None of the witnesses seemed to know what Mr. Marr said in his telephone conversations with the city directors or in his letters to the Governor and Congressman. Mr. Marr admitted that he expressed his dissatisfaction with the ordinance when interviewed on television, but there is no evidence that any city official, or anyone else except Mr. Marr, saw the interview when it was placed on the air. The only evidence as to what Mr. Marr did say is contained in a letter from Director Stocks to City Administrator Keheley, a portion of which was read into the record as follows:

" 'Dear Mr. Keheley: By telephone conversation at home, Mr. Marr advised me that he was a member of the Fort Smith Fire Department and inquired if I was familiar with the Memorandum sent to the Fire Department personnel concerning the recent action of the Board of Directors in authorizing equalization pay for firemen, pursuant to State Law and advice of counsel. He stated that he had written letters to his Congressman and to his Governor and that he is completely dissatisfied with the fact that the result is only one-half time for overtime pay and presumes that the matter will have to be presented to the voters in view of our recent action in increasing the firemen's pay of 10% and authorizing an additional increase as a result of the written demand for the attorney representing seventy-six firemen. I now request the full self study of the Fire Department, including the basis and the need for the number of firemen employed, the Fire Underwriters requirements, and further request that I be advised of the number of Fort Smith firemen who are gainfully employed elsewhere. The study should also include the number of hours that each fireman averages working during the year, the number of days off, the number of fire calls and the number of fires actually covered, the result which are —.' "

It is obviously apparent that § 16 of chapter 10 of the rules, *supra*, is vague and indefinite as to what constitutes the "matter" it refers to, but we are of the opinion that it could have no application to personal complaints made to city directors concerning municipal legislation pertaining to firemen's pay or vacation rights. It is evident from the testimony in the record that Mr. Marr's superiors in the "chain of responsibility" would have been first, his Captain, Sherman Ross; then next the Assistant Fire Chief, Petway; and finally Superior Fire Chief Bevel. The record is not clear as to the nature of the matters, or as to method of handling them, through "the chain of responsibility" after the same has been submitted to a superior officer under the rule. It is not clear from the record whether Mr. Marr's grievances, complaints or opinions were to have been conveyed to the intended city official through the chain of responsibility after being submitted to his captain, or whether the rule simply re-

quired him to first obtain permission from his superiors before discussing the matters he did discuss with Directors Stocks and Crompton. The phrase "shall be handled thereafter" would indicate that the entire "matter" would be heard, considered and determined, or disposed of, within or through, the "chain of responsibility."

It would appear that § 16 of chapter 10, *supra,* might have been designed or intended for such matters as interdepartmental rules, orders and regulations promulgated by the officers of the fire department, but as § 16 is now written, we are of the opinion it is unconstitutional as applied to Mr. Marr's actions as reflected by the record in this case.

Because of the vagueness of the term "matter" referred to in the rule, we have encountered difficulty in finding precedent one way or the other on the subject. In the Iowa case of *Klein* v. *Civil Service Comm'n of Cedar Rapids,* 152 N.W. 2d 195, the Supreme Court of Iowa had on appeal by certiorari, the action of the Civil Service Commission sustaining the suspension of a fireman for disobedience of orders and violation of the rules of his fire department. The specific rules, 23 and 24, in that case were set out in the opinion as follows:

"Rule 23 provides: 'All matters pertaining to or affecting the Department proposed or contemplated by members must be submitted to the Chief for approval and action.'

Rule 34 provides: 'No member of the Department shall give out any information relative to the Department, its operations, equipment and so forth unless permission by the Chief has been granted.' "

The violation in that case consisted of the fireman giving news releases without first clearing such releases with his chief. The Supreme Court of Iowa held that in the absence of proof that the releases impaired public service, the suspension was improper. The court in *Klein* then reviewed a number of decisions from other jurisdictions pertaining to the constitutionality of such rules and regulations and concluded as follows:

". . . the news release of August 5, 1964, by plaintiffs represented nothing more than an exercise of their constitutionally protected right of free speech regarding a labor dispute for which, in the absence of a showing of impairment of public service, they should not have been punished.

To the extent rules 23 and 34 authorize such punishment they are too broad, rigid and unreasonable. Under the fact their enforcement was arbitrary and capricious and therefore illegal."
See also *In re Gioglio,* 248 A. 2d 570.

We conclude, therefore, that § 16 of chapter 10, *supra,* as written, and as it now stands, is unconstitutional as applied to Mr. Marr's conduct as set out in the record in this case, and that the judgment of the trial court should be reversed.

The judgment is reversed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur. I think the regulation as written was not ambiguous and that the action taken by Marr was clearly within its purview, but I concur in the result because I think that the restraint provided in the rule effectively abridged Marr's ever personally presenting his views to anyone other than his immediate superior. For this reason, I think the regulation was an unconstitutional restraint.