In the Matter of the Discharge of Robert V. FAIRBANKS.

CITY OF SIOUX CITY, Iowa, Appellant,

v.

Robert V. FAIRBANKS, Appellee.

No. 62968.

Supreme Court of Iowa.

Jan. 23, 1980.

James L. Abshier, City Atty., and Patrick J. Nugent, Asst. City Atty., Sioux City, for appellant.

Patrick C. McCormick, Sioux City, and Raymond W. Conley of Conley, Conley & Crawford, Des Moines, for appellee.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, HARRIS and McCORMICK, JJ.

REES, Justice.

This is an appeal by the City of Sioux City (hereinafter City) from the ruling and judgment of the district court reinstating plaintiff Robert V. Fairbanks to his position as Auto Mechanic I with the City. Fairbanks had been discharged for refusing to submit to a polygraph examination regarding the disappearance of four tires from the City's maintenance garage where he was employed. His discharge on this ground was affirmed by a divided Sioux City Civil Service Commission. Appeal from the Commission's decision was made to the district court pursuant to section 400.27, The Code 1977.

The district court on December 15, 1978, entered its ruling and judgment, holding that the taking of the polygraph examination bore no relationship to the advancement or improvement of the public service and was capricious and improper. The court therefore overruled the decision of the Civil Service Commission. The City took timely appeal to this court. We affirm.

Fairbanks was observed by two city police officers in an isolated area of the community in the company of a co-employee soon after they had left work at approximately 11:40 p. m. on October 27, 1978. In the open trunk of the automobile owned by Fairbanks' co-employee and occupied by the owner and Fairbanks, were several automobile tires. When asked what they were doing, Fairbanks responded they were going to sell the tires.

Subsequent investigation revealed that four tires of a similar description were missing from the inventory at the maintenance garage. Mr. Mike Randolph, director of the Sioux City Public Service Department, met with Fairbanks and, following a series of questions to which Fairbanks was responsive, requested that Fairbanks voluntarily submit to a polygraph examination regarding his possible involvement with the disappearance of the tires from his place of work. After Fairbanks declined, Randolph ordered him to take a polygraph examination and informed him that refusal to do so would result in his discharge. Following his refusal, Fairbanks was discharged for the alternative reasons of misconduct and disobedience of a direct order to submit to the polygraph examination. On appeal, the Civil Service Commission concluded that sufficient evidence existed to support the latter ground and affirmed the dismissal.

I. Before addressing the merits of this dispute, we first note that, pursuant to section 400.27, The Code 1977, this action was tried de novo to the district court as an equitable action. Our review is also de novo and we will give due weight to the district court's findings of fact although we are not bound by them. *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679, 683 (Iowa 1977). Iowa R.App.P. 4.

II. In addition to arguing the question as to whether the trial court erred in concluding that the refusal to take a polygraph examination was not detrimental to the public service, both parties to this appeal have briefed the constitutional issue as to whether the polygraph examination could have been compelled in the face of an assertion of the Fifth Amendment right against self-incrimination. Our examination of the record, particularly the transcript of Fairbanks' meeting with Randolph, discloses that Fairbanks simply declined to take the polygraph test and did not advance any constitutional basis for refusing. Thus no constitutional issue is presented. *See Coursey v. Board of Fire and Police Commissioners*, 90 Ill.App.2d 31, 41, 234 N.E.2d 339, 343 (1967).

III. Fairbanks was dismissed on the dual grounds of misconduct (alleged involvement in the theft of the tires) and refusal to follow the direct order of a superior, Mr. Randolph, the supervisor. The Civil Service Commission found insufficient evidence in the record made before it to justify Fairbanks' dismissal. We agree. There is no indication that Fairbanks willfully participated in the theft of the tires; nor was definite proof such as serial numbers or other identification presented that the tires missing from the maintenance garage were those sold by Fairbanks' companion that night. The sole issue presented is whether Fairbanks' refusal to submit to a polygraph examination upon the order of a supervisory employee is a permissible basis for termination of employment under section 400.19 (which states that disobedience of an order may justify dismissal of a civil service employee).

In the cases of *Millsap v. Cedar Rapids Service Commission*, 249 N.W.2d 679, 687 (Iowa 1977) and *Klein v. Civil Service Commission*, 260 Iowa 1147, 1156, 152 N.W.2d 195, 200 (1967), we set forth the general standard that a suspension or dismissal pursuant to section 400.19 must be for conduct detrimental to the public service. We must determine whether Fairbanks' refusal to take the polygraph examination was detrimental to the public service. We conclude that it was not and affirm the trial court.

The cases cited by the City, *e. g., Fichera v. State Personnel Board*, 217 Cal.App.2d 613, 32 Cal.Rptr. 159 (1963); *Coursey; Roux v. New Orleans Police Department*, 223 So.2d 905 (La.Ct. of App.), cert. denied, 254 La. 815, 227 So.2d 148 (La.1969), cert. denied 397 U.S. 1008, 90 S.Ct. 1236, 25 L.Ed.2d 421 (1970); all involved either policemen or firemen and focused on the unique law-oriented position such officers hold in our society, *see Frazee v. Civil Service Board*, 170 Cal.2d 333, 335–36, 338 P.2d 943, 945 (1959), as well as the paramilitary character of those departments, which we acknowledged in *Klein*, 260 Iowa at 1156, 152 N.W.2d at

200. Not all jurisdictions have permitted termination on this ground. *See Molino v. Board of Public Safety,* 154 Conn. 368, 225 A.2d 805 (1966); *DeVito v. Civil Service Commission,* 404 Pa. 354, 172 A.2d 161 (1961). In *DeVito,* the holding was based on the nonexistence of any applicable statute or regulation granting authority to require such an examination and the lack of proof of the scientific reliability of the lie detector mechanism, 404 Pa. at 360, 172 A.2d at 164. We find these grounds, with some modification, compelling in the matter before us here.

■■■■ Fairbanks' dismissal was not based upon his failure to answer questions regarding his conduct at work or involvement with the missing tires. The record discloses he did answer questions put to him by his supervisor. His employment was terminated for refusing to take a polygraph test while, presumably, being requestioned. Nowhere do we find authorization for such a requirement or condition and, more importantly, such a condition does not appear within the work description of an Auto Mechanic I for the City of Sioux City, either explicitly or by implication. A government employee may reasonably be expected to answer questions concerning his work-related conduct or his competence to continue in his employment. A requirement to take a polygraph examination, in and of itself, is not so integrally related to the position as to permit its being a condition of employment absent proper authorization or pre-employment notice to the employee. In so holding, we specifically omit policemen and firemen due to the distinctive legal nature of those departments and the duties of such officers.

The limited scientific reliability of the polygraph process, *see* Scholnick, *Scientific Theory and Scientific Evidence: An Analysis of Lie Detection,* 70 Yale L.J. 694 (1961), has caused this court to place strictures upon the admissibility of polygraphic evidence. *See, e. g., State v. Conners,* 241 N.W.2d 447, 457–59 (Iowa 1977); *see also, Swope v. Florida Industrial Commission Unemployment Compensation Board of Re-*

*view,* 159 So.2d 653, 654 (Fla.Dist.Ct.App. 1964). While the results of polygraph examination are of some value, *see* 3A J. Wigmore, *Evidence in Trials at Common Law* § 999 (Chadbourn rev. 1970), the potential for error and resulting implication of the innocent remain as grounds for continued judicial distrust of the polygraph until such time as scientific data establishes its reliability. At present, we are most hesitant to allow a required taking of such a test to be an *implicit* condition of government employment.

We hold that, absent specific authorization or notice of such examination being a condition of employment, requiring submission to a polygraph examination is not sufficiently related to the public service as to make the refusal of an otherwise cooperative employee to submit to such examination a basis for dismissal under section 400.-19, The Code. We therefore affirm the trial court.

AFFIRMED.

LeGRAND, J., concurs.

UHLENHOPP and McCORMICK, JJ., concur specially.

HARRIS, J., concurs in result.

UHLENHOPP, Justice (concurring specially).

As I understand the court's view it is that a polygraph test is not sufficiently work-related to the functions of a mechanic to render his refusal to take such a test ground for dismissal under the civil service statute, section 400.19, The Code 1979. The court does not include firemen and policemen in its ruling.

This court holds that polygraph test-results have not been shown to be sufficiently reliable to be admissible in evidence in court over objection. *State v. Conner,* 241 N.W.2d 447, 459 (Iowa 1976). Literature on the subject supports that holding. *E. g.,* Craver, *The Inquisitorial Process in Private Employment,* 63 Cornell L.Rev. 1, 40 (1977). This being so, I would simply rest the present decision on the undemonstrated re-

liability of polygraph tests, and hold that civil service employees cannot be discharged for refusal to take such tests. I would hold in abeyance the question of the effect of prior agreements to take polygraph tests.

Applying instead the "work related" basis, as the court does, subjects not only firemen and policemen but also a number of other employees to enforceable demands for polygraph tests. Yet the fireman or other employee in question may not be refusing the test because he is guilty, but because he is innocent and, in common with writers in the field, lacks confidence in polygraph tests and does not want to stake his future on them.

Since the results of polygraph tests cannot be used in court over objection, presumably civil service employers will not use the results as grounds for discharging employees and thus force employees to appeal to the courts. Hence we have the unanswered question, what use *will* be made of test results? If the polygraph operator says the employee failed the test, will the "failure" be noted on the employee's record and constitute an obstacle to advancement or to employment elsewhere? In any event, will word circulate through the department that the employee "failed the test"? Will the failure constitute a long-time black mark against the employee—notwithstanding the undemonstrated reliability of polygraph testing?

I would thus base the reversal on the same ground on which we refuse to admit polygraph-test results into evidence over objection: undemonstrated reliability. This obviates consideration of Fourth and Fifth Amendment implications. *See Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908, 916 (1966) ("Some tests seemingly directed to obtain 'physical evidence,' for example, lie detector tests measuring changes in bodily function during interrogation, may actually be directed to eliciting responses which are essentially testimonial. To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment."); Hermann, *Privacy, The Prospective Employee, and Employment Testing: The Need to Restrict Polygraph and Personality Testing*, 47 Wash.L.Rev. 73, 135 (1971).

McCORMICK, J., joins this special concurrence.