FRANK EDWARDS, Appellee, v. CIVIL SERVICE COMMISSION of Sioux City et al., Appellants; HAROLD N. STURGEON, Intervenor, Appellant.

No. 44743.

AUGUST 1, 1939.

Ralph W. Crary, Virgil DeWitt, and Herman Slotsky, for appellants.

John D. Beardsley, for appellee.

HALE, J.—This is an action brought under the provisions of section 1163, Code of 1935, on appeal from the district court of Woodbury county. The plaintiff and appellee, Frank Edwards, is an honorably discharged soldier of the war with Germany, and since 1930 has been a patrolman in the police department of Sioux City. As such he was subject to the rules of such department as provided by ordinance, and of the civil service commission, which rules prohibit use of intoxicating liquor, intoxication, unbecoming or disorderly conduct, neglect of duty, willful maltreatment of a prisoner or of any person, the acceptance of a fee, reward, or gift, failure to report law violations, etc. A special provision of the rules relates to clubbing or maltreating a prisoner for the reason that such prisoner has said something derogatory to the character of the patrolman or has applied epithets, and emphasizes the fact that the office is not to be used for spite or revenge, and states that an officer so guilty should be dismissed. From the time of his appointment up to the time of the incident in controversy there had been several violations of these rules by the plaintiff, and in at least three instances, suspensions for thirty days, and a five-days suspension on June 2, 1938.

On June 19, 1938, the plaintiff attended races at the track in Sioux City, and was at that time alleged to be under the influence of intoxicating liquor. While there he engaged in an argument or altercation with one Vines, a spectator, who had been drinking. The plaintiff was seated in front of Vines, who was not acquainted with plaintiff. Another officer, one Hoffman, was in the race. The plaintiff's own account of the difficulty, as a witness for himself, on direct examination, is interesting:

"Something was said that Hoffman wouldn't win no race. Well, as a brother officer I thought that I would back up my brother officer, which I naturally would do and I says, 'Well, I will just bet one thousand dollars or any part of a thousand dollars,' if he had it, that Hoffman would win any race he got into, if he wanted to win. And Mr. Vines says, 'Well, I don't think he can win any races.' 'Well,' I says, 'I don't know anything about that. I believe Hoffman can win any race he gets into out there, if he wants to win, unless he is told to lose.' So one thing led on to another and I says to Mr. Vines, 'There is no use arguing, because I am a police officer myself,' and I took my badge out of my pocket and showed it to him. Well, he says, 'Well, I don't think you are policeman enough to kick me out of here.' I realized very much that he had been drinking at that time. And he says, 'Well, if that is the case I will just have to show you,' and I took him out. And I walked him out, and I got out pretty near to the gate, and he became very abusive and wanted to get away from me, and I slapped him right on the side of the neck with my open hand. Then, after we got outside of the gate, why, there was a couple women interceded in his respect and wanted me to turn him loose, and they says, 'If you will let him loose we will take him home.' I believe that is what they said, now. Of course, I was kind of excited, and I said, 'Well, if you will take care of him that is O. K. with me.' "

Plaintiff insists that he was not at the time under the influence of liquor, but there is evidence to the contrary. He admits that he struck the prisoner, before leaving the ground, and there is also testimony that he struck him afterward. From plaintiff's testimony it is doubtful if Vines was actually arrested. On cross-examination, in answer to a question, plaintiff answered:

"You mean why did I take him out of there? Well, being a police officer of the city, I believe that any time that anybody tells me that I am not officer or not policeman enough to take him out, I believe I am going to try it."

On the following morning, June 20th, plaintiff was discharged by the chief of police, which discharge was confirmed by the commissioner of public safety; and an appeal was then taken

to the civil service commission and hearing had on specifications filed by Harold N. Sturgeon, commissioner of public safety, charging misconduct, disobedience, and failure to properly discharge his duties. Evidence was heard, among the witnesses being Vines. He was apparently a reluctant witness, but his evidence, as well as that of the plaintiff himself, shows that his treatment by the plaintiff was not so much the result of Vines' boisterous conduct as a personal disagreement between the two men.

There developed at the hearing other matters in the record of plaintiff, including a statement that at one time he had accepted a gift or tip of a few dollars and released a prisoner. At no place in his testimony did plaintiff deny this statement.

After the completion of the hearing, and on July 6, 1938, the commission rendered its decision:

"It is the unanimous decision of the Commission that the appeal of the appellant be denied and his discharge be sustained."

On September 6, 1938, on petition of plaintiff a writ of certiorari issued, and thereafter in obedience thereto the record before the commission, with transcript of proceedings, was filed in the district court. On the record returned into court ruling thereon was made on November 30, 1938. Such ruling, after setting out the preliminary facts and the charges made and the method of trial, proceeds:

"The Court further finds that while the plaintiff, in the exercise of his official duties, has not always used discretion and has from time to time been the subject of censure from his superior officers, yet, so far as the record discloses, none of his activities were of a very serious nature; and while a public official should not claim that he has paid the penalty to society for acts which he should not have committed, nevertheless, such acts, in and of themselves, would not justify unnecessarily harsh treatment or justify this Court in considering them in connection with this hearing;

"That this Court holds that the plaintiff was indiscreet in the arrest of the said R. S. Vines at the Midget Race Track, and that further he was indiscreet in assaulting the said Vines after he had taken him out of the grandstand; but the plaintiff

claims, and the Court is inclined to agree with him, that there was some justification, although slight, for the so-called assault; that in view of the fact that the plaintiff, Frank Edwards, is an honorably discharged soldier of the United States Army and served his country as an immature boy in the Army of the United States and upon the battlefields of Europe, and in view of the fact that he is now thirty-seven years of age and that he has been upon the police force of the City of Sioux City for seven years, his discharge by the Commission was unnecessarily harsh, although this Court is inclined to believe that he was deserving of severe discipline.

''For the reasons given above this Court finds that the plaintiff, Frank Edwards, should be, and he is hereby reinstated to his position as patrolman on the police force of the City of Sioux City, Iowa, said reinstatement to date from October 15, 1938, with full pay from that date and that date only.''

From this ruling defendants and Harold N. Sturgeon, intervenor, appeal.

I. No question is made that the court had the right to review the evidence before the commission, and it was so stated in oral argument. The action was brought under the soldiers preference law, and the provisions of section 1163, Code of 1935.

''No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari.''

It seems to be the holding of this court that a review might be had of all proceedings. It is true that the scope of inquiry by the court is limited in certiorari proceedings generally. See Luke v. Civil Service Commission, 225 Iowa 189, 279 N. W. 443. But in cases involving the above section the office of the writ is enlarged. See Allen v. Wegman, 218 Iowa 801, 808, 254 N. W. 74, 78, wherein it is said:

''It follows, with this enlarged scope of the review to test

the rightfulness of the discharge under the act, it is not, as in ordinary cases of certiorari, limited to evidence on the question of jurisdiction or other illegality, * * *.'' Citing, and quoting from, Butin v. Civil Service Commission, 179 Iowa 1048, 162 N. W. 565.

II.  But we must also not lose sight of the fact that the ruling of the civil service commission, charged as it is with the duty of examining into and passing upon the conduct of the officers under its supervision, is entitled to consideration. The general rule may be briefly stated:

"When an appointing officer complies in good faith with all requirements as to hearings, and then dismisses from the service as incompetent a particular subordinate who happens to be a veteran, the courts will not usually interfere to direct or control the discretion of the officer so exercised." 5 R. C. L., sec. 6, p. 613; 10 Am. Jur., sec. 11, p. 933.

This, of course, does not mean that the ruling of the commission is conclusive, but such ruling should not lightly be set aside.

III.  The evidence, only a part of which has been referred to above, seems to us amply to sustain the finding of the commission as to the guilt of the plaintiff. The ruling of the chief of police, sustained by the commissioner of public safety, was further sustained on a full and complete hearing before the civil service commission. The ruling of the trial court further establishes that fact. The court nowhere intimates that the plaintiff was not guilty of the offenses charged. It calls them indiscreet, and alleges there was some justification, although slight. We do not agree that under the evidence there was any justification. In considering the penalty imposed the court calls attention to plaintiff's record as a soldier, to his age and service. But the plaintiff was a police officer and subject to the same rules as other members of the force.

"The intent of the preference laws is to make veterans secure in their positions in the public service and to prevent their removal except for their own misconduct." Note, Ann. Cas. 1914D, 728, and cases cited.

But a former soldier guilty of misconduct in office is not entitled to protection, any more than any other public employee. The statute was not intended, nor is it applied, for the purpose of retaining in office one who violates his duty. Nor does the plaintiff so claim, but asserts that the evidence is insufficient.

■ Plaintiff further asserts that punishment given should not be for past offenses, "that he has paid the penalty to society for acts which he should not have committed." We entertain doubts about payment of that kind, but we have no doubt about the right and duty of a commission or magistrate to take into consideration the record of a guilty person in fixing a penalty. To hold otherwise would require also that one should give no consideration to a past good record.

■ The plaintiff, after full hearing, has been found guilty under the rules, which provide dismissal as a penalty, and under the ordinance of the city; but the court held that "his discharge by the commission was unnecessarily harsh, although the court is inclined to believe that he was deserving of severe discipline."

With only a part of the above-quoted sentence can we agree. The public has a right to have for peace officers men of character, sobriety, judgment, and discretion. All officers are likely to be subjected to criticism, sometimes unjust, but no police officer should invite such criticism, either of himself or of the police force as a whole, by his personal conduct. The commission found that the plaintiff had not complied with the rules of his department, and that he was guilty as charged; and we believe that the commission was warranted in its finding and order for discharge of the plaintiff. The writ should have been annulled and the order of the civil service commission sustained. The cause is reversed and remanded with instructions to enter an order annulling the writ.—Reversed and remanded with instructions.

MITCHELL, HAMILTON, RICHARDS, STIGER, SAGER, BLISS, and MILLER, JJ., concur.