Kenneth E. **MILLSAP,** Appellant,

v.

**CEDAR RAPIDS CIVIL SERVICE COMMISSION et al.,** Appellees.

No. 2–57276.

Supreme Court of Iowa.

Jan. 19, 1977.

Robert C. Nelson and Stephen B. Jackson, Cedar Rapids, for appellant.

David F. McGuire, City Atty., and Benjamin W. Blackstock, Cedar Rapids, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

MOORE, Chief Justice.

Plaintiff policeman appeals from district court judgment upholding decision of Cedar Rapids Civil Service Commission wherein he was temporarily suspended without pay and demoted from lieutenant to detective. We affirm.

By stipulation the factual record made before the Commission constituted the record in the lower court.

We believe the following is a reasonable summary of the facts: On March 19, 1973, Kenneth Millsap, a 15-year veteran Cedar Rapids policeman and then lieutenant of detectives, and other off-duty police officers, traveled to Guttenburg, Iowa to fish from a barge in the Mississippi River. The excursion commenced at 3:00 a. m. and continued until after 3:00 p. m. when the men in Millsap's automobile returned to Cedar Rapids. Millsap and various other officers present on the trip testified he drank beer early in the morning prior to becoming ill; thereafter he switched to apricot brandy. There was conflicting testimony as to whether the combination of his weakened physical condition and alcohol resulted in his intoxication by the time he left Guttenburg. His passengers noticed nothing peculiar; other officers testified he was intoxicated when he left the barge and drove "erratically" later that afternoon upon his return to Cedar Rapids.

At approximately 6:30 p. m. Millsap drove two fellow officers to their homes and was enroute to his home when his vehicle ran out of gas. Millsap pulled into the May Drug parking lot at 42nd Street and Center Point Road, N.E., in Cedar Rapids, and later claimed he was attempting to call his wife from a public telephone. A private citizen, after observing Millsap for several minutes, called the police department and reported a man was "going through the phone book page by page and acted as if he were drunk or something." Patrolmen Young and Walton were dispatched to the scene. Several private citizens observed the events following the arrival of the two patrolmen. They testified the officers did not exercise excessive force in meeting Mill-

sap's resistance to arrest and removal from his vehicle.

Both Young and Walton testified at the Commission hearing that Millsap was intoxicated and refused to show identification when asked. Furthermore he had stated his name was "Smith", said the car was stolen, and threatened that he had a gun and would "blow them apart" if the harassment did not cease. After telling both officers to "get fucked", Millsap attempted to drive away and almost ran over one of them. Later they were able to bodily remove him from his automobile after a violent struggle. It was only then that the officers recognized Millsap, a fellow police officer. Millsap was unshaven and was wearing a jacket or sweatshirt with a hood down over his head and around his face. One of the civilian witnesses testified he could not see Millsap's face until after he was removed from the automobile. An eight-year civilian police secretary testified she did not recognize Millsap at the police station booking until he spoke. She opined he was intoxicated.

Millsap did not deny the events at the scene of his arrest but testified the two officers knew who he was from the outset but were harassing him for the purpose of setting him up.

As a result of the incident Millsap was arrested, booked and confined in the city jail for over two hours. Young and Walton signed informations charging Millsap with intoxication and resisting an officer. He was later taken home by other officers. They opined he was not intoxicated at that time.

The next morning Millsap met with Chief of Police George Matias and Assistant Chiefs Clift and Vanous. At this meeting Millsap admitted he had overreacted and said he was sorry the incident had gotten out of control. After it was agreed the informations would not be filed and the matter would be handled within the police department, Millsap signed a release of any liability and agreed to a two-week leave with pay.

After his return there was interdepartmental dissension over the March 19 incident. Millsap testified there were rumors and innuendos which seriously impaired his ability to perform his duties. As a consequence he wrote a letter to Chief Matias detailing his complaints. On advice of counsel, he filed a notice of tort claim against the City on May 18 which alleged he and his wife had suffered damage in the amount of $500,000.

On May 24 Chief of Police Matias advised Millsap he had been "indefinitely suspended." Millsap appealed to the Civil Service Commission as provided by section 365.20 of the 1973 Code—now section 400.20 as renumbered in 1974. The Chief of Police thereafter filed written specifications charging that on March 19, 1973, (1) Millsap had conducted himself in a manner unbecoming a police officer and detrimental to the service contrary to chapter 365 of the 1973 Code and the Cedar Rapids Police Rules and Regulations, (2) that he was intoxicated and (3) that he resisted, assaulted and threatened police officers performing their duties.

The Civil Service Commission, after hearing 32 witnesses and study of several exhibits, found the first and third written specifications had been proven. It found intoxication had not been sufficiently shown due to conflict of opinions and the lack of a scientific test for sobriety. The Commission unanimously modified the suspension to 60 days without pay and ordered Millsap demoted to the rank of detective. He returned to work as a detective.

Subsequently, he appealed to the district court as provided by section 365.27 and raised the issues of constitutionality of section 365.19 and Cedar Rapids Police Rule 20, section 6 and also alleged each was inapplicable to his off-duty conduct. Additionally he asserted the findings and order of the Chief of Police and the Commission were arbitrary and capricious. Defendants denied plaintiff's claims and affirmatively alleged waiver of the right to appeal by acceptance of reinstatement.

After reviewing de novo the entire record of the administrative hearing, the trial court concluded Millsap's off-duty actions constituted "misconduct" within the meaning of section 365.19 and affirmed the Commission ruling. This appeal followed.

■ I. Our review is de novo. We give weight to trial court's findings of fact but are not bound by them. *Brightman v. Civil Serv. Com'n of City of Des Moines, Iowa,* 204 N.W.2d 588, 590. Rule 344(f) 7, Rules of Civil Procedure.

■ II. We first consider defendants-appellees' pleaded affirmative defense that by accepting the benefits inherent in the Commission's ruling consisting of pay and reinstatement, plaintiff-appellant waived his right to appeal. The lower court rejected this contention.

Generally compliance with a judgment is deemed a waiver of the right to appeal. *City of Cedar Rapids v. Cox,* 250 Iowa 457, 467, 93 N.W.2d 216, 222; 4 C.J.S. Appeal & Error § 212; Annot. "Appeal—Compliance with Judgment as Barring Right to Appeal", 39 A.L.R.2d 153. The burden is on one who claims the loss of rights by an adverse party through acquiescence to show facts supporting his contention. *Union County Board v. Hotel Inv. Co.,* 250 Iowa 59, 61, 92 N.W.2d 397–9.

Defendants properly raised this matter in their answer in district court. However they presented no evidence when the case was submitted which indicated Millsap's employment status. Thus we could well dispose of the issue on the basis that defendants failed to carry their burden of proof.

We elect however to proceed to the merits of this issue and find defendants' arguments unpersuasive for two reasons. First, we disagree that plaintiff acquiesced in a benefit as that term is generally understood. After having been "indefinitely suspended" he was reinstated, but docked 60 days wages and demoted from lieutenant to detective. To hold that by going back to work he waived his right to appeal any discipline meted out to him by his superiors

is a degree of sophistry in which we refuse to indulge.

A further reason for rejecting defendants' argument is that in recent years we have retreated from the severe appellate waiver doctrine which they espouse. In *Vermeer v. Sneller,* Iowa, 190 N.W.2d 389, 395 we held that payment of court costs pending an appeal did not constitute waiver and stated:

"We have said waiver is the voluntary relinquishment of a known right. *Babb's, Inc. v. Babb,* 169 N.W.2d 211, 213 (Iowa 1969); *Perkins v. City National Bank of Clinton,* 253 Iowa 922, 935, 114 N.W.2d 45, 52–53 (1962). It must be made intentionally and with knowledge of the circumstances. *Grandon v. Ellingson,* 259 Iowa 514, 521, 144 N.W.2d 898, 903 (1966). Certainly it would be ignoring realities to say these plaintiffs, in paying the minimal costs below, knowingly and intentionally, with knowledge of the circumstances, waived their right to a decision from this court."

In *Hegtvedt v. Prybil,* Iowa, 223 N.W.2d 186, 188–189, we held that payment of a judgment under compulsion did not amount to a voluntary waiver of the right to appeal.

In *In re Marriage of Abild,* Iowa, 243 N.W.2d 541, 543, we stated that when an appellant accepts only that which the appellee concedes is due him under the judgment, he is not barred from prosecuting his right to a further recovery on appeal.

Consistent with this recent trend we again fail to find a voluntary waiver of the right to appeal. To hold that in order to pursue an appeal plaintiff must refuse reinstatement and thus remain outside the area of law enforcement where he has earned his livelihood for 15 years while his appeal is processed, a period of over three years, is a harsh and unreasonable result.

Plaintiff did not waive his right to appeal by returning to work as a Cedar Rapids police detective.

III. Plaintiff first challenges the constitutionality of section 365.19, Code 1973 (now renumbered section 400.19 of the 1975

Code) and section 6 of rule 20 of the Cedar Rapids Police Department Rules and Regulations on the grounds of vagueness and overbreadth.

Section 365.19 provides "misconduct" as a basis for suspension, demotion or discharge of civil service employees. Section 6 of rule 20 provides that an employee of the department may be disciplined for "conduct unbecoming an officer and detrimental to the service." Plaintiff argues the statute and rule formed the basis of his suspension and demotion and therefore the sanctions imposed are of no effect due to the claimed unconstitutionality of each.

Where regularly enacted civil service statutes and rules and regulations are challenged several well-settled principles are applicable. Such statutes and rules are accorded a strong presumption of constitutionality and all reasonable intendments must be indulged in favor of the legislation attacked. *State v. Aldrich,* Iowa, 231 N.W.2d 890, 894; *Iron Workers Local No. 67 v. Hart,* Iowa, 191 N.W.2d 758, 771 and citations. Also, it is our duty to construe civil service statutes liberally with a view to promote their objects and assist the parties in obtaining justice. *Brightman v. Civil Serv. Com'n of City of Des Moines,* Iowa, 171 N.W.2d 612, 615; Code section 4.2.

The purpose of civil service statutes and police department rules regulating the discipline of policemen for misconduct and conduct unbecoming police officers is not only for the punishment of the officer but also for the protection of the public. 16 McQuillin, Municipal Corporations (Third Ed.1972), section 45.06b, page 584; *DeGrazio v. Civil Service Com'n of City of Chicago,* 31 Ill.2d 482, 488, 202 N.E.2d 522, 526; *Misbach v. Civil Service Com.,* 230 Iowa 323, 327, 297 N.W. 284, 286. Also see *Edwards v. Civil Service Commission,* 227 Iowa 74, 80, 287 N.W. 285, 288 where we state: "The public has a right to have for peace officers men of character, sobriety, judgment, and discretion."

The challenged statute and rule must be read in the context of this two-pronged objective.

In *Arnett v. Kennedy,* 416 U.S. 134, 158–64, 94 S.Ct. 1633, 1646–47, 40 L.Ed.2d 15, 36, the court recognized a noncriminal statute is unconstitutionally vague under due process when its language does not convey sufficiently definite warning as to proscribed conduct when measured by common understanding or practice. See also *Horn v. Burns and Roe,* 8 Cir., 536 F.2d 251, 254. A noncriminal statute is not unconstitutionally vague, however, where its terms are such that the ordinary person exercising common sense can sufficiently understand and fulfill its proscriptions. *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830, 837. Only when men must necessarily guess at the meaning of a statute and differ as to its application must it be declared invalid. *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328. The root of the vagueness doctrine is a rough idea of fairness. *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584, 590.

When confronted with vagueness challenges we have pointed out that a statute meets the constitutional test if its meaning is fairly ascertainable by reference to similar statutes, other judicial determinations and reference to the dictionary, or if the words themselves have a common and generally accepted meaning. *Iron Workers Local No. 67 v. Hart,* supra, 191 N.W.2d 758, 772 and citations. Even if more specific language could be devised, it is apparent the absence of criminal sanctions requires less literal exactitude to comport with due process; unless the statute clearly, palpably and without doubt infringes the constitution it will be upheld. *Lee Enterprises, Inc. v. Iowa State Tax Com'n,* Iowa, 162 N.W.2d 730, 739 and citations.

Both on its face and as applied to the facts in this case the term "misconduct" passes constitutional muster. We have given a readily recognized meaning to the term "misconduct" in the civil service set-

ting. See *Edwards v. Civil Service Commission,* supra, 227 Iowa 74, 287 N.W.2d 285.

Recent authority convinces us the challenged rule is facially constitutional. In *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439, a Captain of the Army Medical Corps was charged by court martial with "conduct unbecoming an officer and a gentleman" after he urged negro enlisted personnel to refuse to go to Vietnam. Upon conviction he was dismissed from service and sentenced to three years at hard labor. He sought habeas corpus relief challenging the relevant charging provisions as vague and overbroad. In reversing a lower court decision, the Supreme Court held the term as used in the military context was neither vague nor overbroad.

In *Arnett v. Kennedy,* supra, the Supreme Court upheld a portion of the Lloyd-LaFollette Act, 5 U.S.C. § 7501, which provided for dismissal of federal employees for "such cause as will promote the efficiency of the service" against vagueness and overbreadth challenges. The court at pages 159–160, 416 U.S., pages 1646–1649, 94 S.Ct., pages 36–37, 40 L.Ed.2d, pointed out the need for general standards of conduct in employee statutes.

In *Milani v. Miller,* Mo., 515 S.W.2d 412, the court relied on *Parker v. Levy,* supra, and analogized the requirements of police regulations with those of the military. We find the following portion of the well-reasoned opinion quite persuasive. At pages 418, 419 the court states:

"We do not believe that *Levy* was effectively distinguished there. In our opinion the principles announced in *Levy* fairly indicate the constitutional validity of the regulations in our case, certainly as applied to these appellants, although there are factual differences. If this is not true, then it is certain that the Supreme Court has not passed upon the question. We hold that the principles declaring the validity of such regulations as necessary for the discipline of the military, are also applicable to the internal regulation and discipline of a metropolitan police department. We may legitimately assume that by custom, usage and 'experience' a reasonable degree of 'specificity' has been afforded in the application of the regulations involved here, and that the members of the Department are familiar with their responsibilities and duties. We are not dealing with a criminal statute which may leave the public uncertain as to its permissible conduct. It would be impossible to specify every act or omission which might and properly should constitute a violation. It is impossible to discuss all of the cases touching upon this subject.

"From the foregoing we conclude that §§ 7.001 and 7.002(c) of Rule 7 were enacted within the lawful power and authority of the Board; that insofar as these appellants (and each of them) are concerned, the sections were and are not unconstitutionally vague, they were not unconstitutionally applied, and that appellants respectively had 'fair notice' that their acts would constitute violations of the rule. We do not and need not decide whether these sections of the Rule are valid and enforceable in all instances and in all applications. They are not void and invalid on their faces and in all events.

"The fact that Officer Milani was not on duty when he committed the offense in question is of no consequence. He was at all times a member of the Department (a Sergeant) and was known as such, on and off duty. His act of engaging in a sort of public brawl and attempting to strike two persons with his car, was certainly 'unbecoming to a member of the Department,' whenever performed."

See also *Civil Service Com'n of City of Tucson v. Livingston,* 22 Ariz.App. 183, 525 P.2d 949, cert. denied, 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 105; *Faust v. Police Civil Serv. Com'n of Bor. of State Col.,* 22 Pa. Cmwlth. 123, 347 A.2d 765; *State ex rel. Richey v. Neenah Police and Fire Com'n.,* 48 Wis.2d 575, 180 N.W.2d 743.

Plaintiff's strong reliance on the holding in *Sponick v. City of Detroit Police Department,* 49 Mich.App. 162, 211 N.W.2d 674, is

misplaced in view of the subsequent holding in *Parker v. Levy,* supra.

■ We hold section 365.19, Code 1973 (now renumbered 400.19, Code 1975) and section 6 of rule 20 of the Cedar Rapids Police Department Rules and Regulations are not unconstitutionally facially vague. We hold the statute and rule were constitutionally applied to the facts presented in this case. See *Allen v. City of Greensboro, North Carolina,* 4 Cir., 452 F.2d 489.

Because plaintiff contends in his brief that his argument encompasses an overbreadth challenge we briefly comment on this element of the case even though the thrust of his argument discusses vagueness.

■ The Supreme Court has stated a statute is overbroad if its sweep encompasses expressive or communicative conduct protected by the First Amendment. Statutes and rules not drawn with the requisite degree of narrow specificity must necessarily fall. *Broadrick v. Oklahoma,* supra, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830; *CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796.

■ *Parker v. Levy,* supra, also upheld the military regulation against an overbreadth challenge. Additionally we note that on its face the statute regulates conduct. Neither the First or Fourteenth Amendments have ever been interpreted to provide the same kind of freedom of communication through conduct as contrasted with pure speech. *Cox v. Louisiana,* 379 U.S. 536, 555, 85 S.Ct. 453, 464–5, 13 L.Ed.2d 471, 484; *State v. Williams,* Iowa, 238 N.W.2d 302, 308. It follows that we reject plaintiff's facial attack on the statute and rule.

Additionally we reject any argument that as applied to the facts of this case the case must be reversed on overbreadth grounds. The incident of March 19 was a case of purely improper conduct not protected by the First Amendment.

■ IV. Plaintiff next asserts the provisions of section 365.19 relating to suspension, demotion and discharge have appli-cation only to the performance of an official duty by a civil service employee. Therefore, because he was indisputably off-duty when the March 19 incident occurred, Millsap urges the sanctions imposed against him under this section cannot stand. We disagree.

It is well established that the image presented by police personnel to the general public is vitally important to the police mission. *Burback v. Goldschmidt,* 17 Or.App. 181, 521 P.2d 5, 7. One leading authority in municipal corporations has explained the importance of this image to our society as follows:

"Members of a police force and its responsible officers in many respects constitute a military organization. Discipline must be enforced, and members of the force must surrender individual powers and freedom of action in favor of undivided allegiance to their public duty. It has been aptly and succinctly stated that a police officer is a special kind of public officer; his primary duty is to enforce and uphold the law; he is constantly called upon to exercise tact, restraint and good judgment in relationship to the public; he represents law and order to the citizenry; and must present the image of personal integrity and dependability in order to have the respect of the public. * * *." 16 McQuillin, Municipal Corporations, (Third Ed.1973) section 45.16 at pages 621–622.

We applied this rationale in a case involving firemen. *Klein v. Civil Service Commission of Cedar Rapids,* 260 Iowa 1147, 1186, 152 N.W.2d 195, 200. Recently the Supreme Court has recognized that the need for a centralized and disciplined police force capable of promoting the public safety and welfare justifies regulating the personal appearance of police officers in a manner different from members of the general public. *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708.

Consistent with this approach, other jurisdictions have not hesitated to hold that off-duty conduct by policemen may be used as the basis for a charge of conduct unbe-

coming an officer. *In re Zeber's Appeal,* 398 Pa. 35, 43, 156 A.2d 821, 825; *Kammerer v. Board of Fire and Police Com'rs,* 44 Ill.2d 500, 256 N.E.2d 12. The Illinois court aptly stated the irrationality of doing otherwise in *Davenport v. Board of Fire & Police Com'rs of Peoria,* 2 Ill.App.3d 864, 870, 278 N.E.2d 212, 216:

" * * *. Should a police officer engage in misconduct which is detrimental to the service it would be absurd to say that he is clothed with a cloak of immunity if such misconduct occurred during 'off-duty' hours. By the very nature of his employment a police officer is in the eyes of the public and for the good of the department must exercise sound judgment and realize his responsibilities to the department and the public at all times."

On the basis of the sound reasons for requiring a high standard of conduct for police officers and the authorities of sister states, we hold section 365.19 and section 6 of Rule 20 include off-duty "misconduct."

■ V. Plaintiff next argues that off-duty intoxication is no basis for suspension or discharge either under section 365.19 or rule 19, section 26 of the Cedar Rapids Police Rules and Regulations. Therefore, Chief Matias improperly suspended him for intoxication since he was off-duty when the incident occurred.

Our discussion in the previous division relating to off-duty "misconduct" is clearly dispositive of the present issue without further elaboration. However, for purposes of exposing the fallacy of plaintiff's contention some additional comment is required.

Initially, we note that Millsap's reliance on *State v. Welsh,* 109 Iowa 19, 79 N.W. 369 is entirely misplaced. In the later case of *State v. Henderson,* 145 Iowa 657, 662–663, 124 N.W. 767, 769–770 we expressly disavowed any theoretical distinction between private misconduct and official misconduct in a case involving removal of public officials because of intoxication. Although Henderson involved removal of a mayor from office, the rationale is equally applicable to removal of policemen. Public confidence is destroyed in a public official when

he ceases to effectively carry out the duties he is assigned. Also see *O'Connor v. Youngblade,* 250 Iowa 808, 96 N.W.2d 457; *State v. Baughn,* 162 Iowa 308, 143 N.W. 1100.

Additionally, regulation of off-duty intoxication by police officers is consistent with the view generally adopted by authorities in municipal corporations. 4 McQuillin, Municipal Corporations (Third Ed.1968), section 12.239a—Intoxication, pages 263–265. A recent Nebraska decision upheld the discharge of a police officer where he had become intoxicated and mistreated a private citizen while off-duty. *Sailors v. Falls City,* 190 Neb. 103, 206 N.W.2d 566. While the situation there was more grave misconduct on the part of the police officer, we find the underlying rationale persuasive.

Plaintiff's arguments that a police officer can only be removed for intoxication while per se on duty are without merit.

■ VI. Plaintiff also asserts his original suspension by Chief Matias was arbitrary, capricious and unreasonable because it was not ordered in compliance with section 365.18 of the 1973 Code which provides:

"No person holding civil service rights as provided in this chapter shall be removed, demoted, or suspended arbitrarily, *except as otherwise provided in this chapter,* but may be removed, demoted, or suspended after a hearing by a majority vote of the civil service commission, for neglect of duty, disobedience, misconduct, or failure to properly perform his duties." (Emphasis added).

He argues he should be reinstated to his former position with the rank of Lieutenant of Detectives and further, that he be awarded back pay.

It is patently obvious plaintiff in his argument chooses to ignore the provisions of section 365.19 which control his suspension. That section in part provides:

" * * *. The chief of police * * * may *peremptorily* suspend, demote, or discharge any subordinate then under his

direction, for * * * misconduct." (Emphasis Added)

We are bound to give effect to the whole statute and construe it in such a manner that no part will be rendered superfluous. *State ex rel. State Highway Commission v. City of Davenport,* Iowa, 219 N.W.2d 503, 507; *State v. Jennie Coulter Day Nursery,* Iowa, 218 N.W.2d 579, 582. Chief Matias acted within his defined powers when he peremptorily suspended Lt. Millsap on May 24, 1973. We note the Supreme Court has recently upheld a similar North Carolina provision against a due process challenge. See *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684.

██ Plaintiff also argues he should have been suspended for intoxication immediately after the March 19 incident. This contention is untenable.

Our de novo review reveals there was sufficient evidence before Chief Matias to warrant suspending Lieutenant Millsap. Plaintiff's claim of arbitrary, capricious and "tyrannical" actions against him is wholly without merit.

VII. Plaintiff's final argument for reversal is that trial court erred in concluding as a matter of law that all events antedating the suspension other than the March 19, 1973 incident were immaterial and irrelevant. We need not decide this issue as our de novo review of the entire record made before the commission brings us to the conclusion the commission's order as affirmed by the lower court must be upheld.

We have considered the several contentions of the parties and find no reversible error. The trial court judgment is affirmed.

AFFIRMED.