**Michael KERN, Appellant,**

v.

**SAYDEL COMMUNITY SCHOOL DISTRICT, Appellee.**

No. 99–0923.

Supreme Court of Iowa.

Dec. 19, 2001.

634, 639, 159 N.W. 1044, 1046 (1916) (equitable subrogation doctrine is not enforced when it would be inequitable).

Joe Walsh of Hedberg, Owens, Hedberg & Spaulding, P.C., Des Moines, for appellant.

Brian L. Gruhn of the Gruhn Law Firm, P.C., Cedar Rapids, for appellee.

CARTER, Justice.

Plaintiff, Michael Kern, appeals from an adverse judgment in his wrongful termination claim against the defendant, Saydel Community School District. The basis for his claim is the alleged failure of the school district to provide a hearing on his proposed termination as required by the Iowa Veterans Preference Law, Iowa Code § 35C.6 (1997). After reviewing the record and considering the arguments presented, we affirm the decision of the district court.

The evidence presented to the district court was substantially as follows. Plaintiff served in the United States Navy from 1972 until his honorable discharge in 1975. In January 1996 he was hired by the school district as a custodian and became a member of the local union.

On September 19, 1996, plaintiff's supervisor, Merle Schieffer, met with him and presented him with a written memorandum which stated that several classrooms were not properly cleaned and that the office area and library had not been vacuumed. All of these deficiencies were in the portion of the building that plaintiff was assigned to clean. Thereafter, several teachers complained about the condition of the rooms plaintiff was assigned to clean. In a memorandum dated October 14 plaintiff was advised by Schieffer that he had left the lights on in at least one-half of the classrooms, trash remained in the garbage cans in several classrooms, several classrooms were not properly cleaned, office areas had not been vacuumed, gum remained in the restroom urinals, and hand towels in the bathrooms had not been replaced. He was told to improve his work performance.

A written work performance appraisal of plaintiff's efforts was prepared on October 14, 1996, and mailed to him. He concedes that he received it. This performance appraisal cited deficiencies in work performance, quality of work, quantity of work, the ability to work with others, job attitude, and dependability. Schieffer and the building principal met with plaintiff on Oc-

tober 21 concerning this performance appraisal.

On May 28, 1997, plaintiff received a written communication that an inspection by his supervisor revealed several classrooms had not been vacuumed, bathrooms had not been cleaned, and doors were left unlocked. This notification advised plaintiff that a meeting was being scheduled for June 2, 1997, to discuss his continued employment. The notice advised plaintiff that this meeting would be step three of the district's procedures for disciplinary action due to poor job performance. Those procedures provide as follows:

## PROCEDURES
## FOR DISCIPLINARY ACTION DUE
## TO JOB PERFORMANCE

Walk-through evaluations will be done at anytime during or at the end of a regular work shift(s). Walk-throughs will precede any formal evaluation. Walk-through data will be documented.

### Administrative Procedures

Step 1 Following the identification of job performance concerns, an informal meeting will be held with the employee and the Facilities Director to highlight the areas of concern(s). These areas of concern(s) will be documented in writing, dated, and placed in the employee[']s file. The object of Step one (1) is to alert the employee of performance concerns and to gain employee feedback.

Step 2 This step is subsequent to identification of job performance concerns which the employee has either continued to display or has not appropriately addressed.

Step Two (2) includes a formal meeting with the Facilities Director, the employee, and the Building Principal. This step may include the Superintendent, should conditions require such action or is requested. The purpose for Step two (2) will be to present formal complaints of each of the job performance(s) to the employee, and to gain their feedback. Results from the Step two (2) meeting may be referred to Step three (3) for administrative action, or placed back on the employee for correction.

Step 3 Step three (3) will be held to discuss the continued employment of an employee whose performance continues to be less than expected. This meeting will be held with the employee, the Facilities Director, Principal, and Superintendent. Disciplinary action may be taken as a result of this conference.

Please note that the Custodial Evaluation Form will be used throughout this process. The purpose of this information is both to fulfill contractual agreements, and to help our employees improve as professionals.

Plaintiff, Schieffer, the building principal, and plaintiff's union representative attended the June 2 meeting. Plaintiff attended the meeting and conveyed his feeling that his work deficiencies were partly the result of being required to perform too many tasks within a limited period of time and partly the result of excessive uncleanliness on the part of pupils and teachers. At the conclusion of the meeting, Schieffer determined that plaintiff could not be counted on to improve his work performance, and that such performance was not up to district standards. He advised plaintiff that he intended to recommend his termination to the school superintendent and that, in the interim, plaintiff would be suspended without pay. He further advised plaintiff that, because the superintendent was unable to attend

the June 2 meeting, plaintiff would be afforded an opportunity for a separate meeting with the superintendent to complete step three of the disciplinary procedure.

On June 16, 1997, plaintiff and his union representative met with Dr. David Arnold, the superintendent. Plaintiff was given the opportunity to review his personnel file, dispute or ask questions about anything in the file, and address any concerns he had. After the meeting, Dr. Arnold reviewed plaintiff's personnel file and considered the information he received from Schieffer, plaintiff, and the union representative. Dr. Arnold then made a recommendation to the school board to terminate plaintiff's employment. The board followed the superintendent's recommendation and terminated plaintiff's employment with the school district. Plaintiff was not present at the meeting of the board at which his termination took place.

Pursuant to the district's labor contract, plaintiff filed a grievance, contending his discharge was improper under the contract. An arbitration proceeding was held on August 13, 1997. Plaintiff was present and was assisted by Sharon McIntosh, Stanley Nevins, and Linda Davis from the union. Both the school district and plaintiff called witnesses to testify before the arbitrator. The arbitrator's decision found that the school district did not violate the plaintiff's contractual rights, but, in so ruling, did not consider the requirements of the Veterans Preference Law.

Iowa Code section 35C.6 (1997) states:

No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari or at such person's election, to judicial review in accordance with the terms of the Iowa administrative procedure Act if that is otherwise applicable to their case.

There is no dispute that this provision is applicable to plaintiff. Plaintiff was employed by a public employer. *See* Iowa Code § 20.3(11). He was also honorably discharged from the United States Navy in February 1975, making him a person to whom a preference was granted. *See* Iowa Code § 35C.1(1).

The term "hearing" is not defined by statute, nor is it defined in Iowa case law. Guidance in removing a veteran for incompetency or misconduct was sought from the attorney general. The attorney general stated:

Written charges should be made stating the grounds for the removal, and a copy of such charges, together with notice of the time and place of hearing, should be served upon the accused, and at such time and place the person sought to be removed should have an opportunity to be heard and refute such charges and show why he ought not to be discharged.

Upon hearing if the charges are not sustained by a preponderance of the evidence the person should be exonerated, but if a preponderance of the evidence shows incompetency or misconduct the person should be removed from his position or discharged from employment.

1909 Op. Iowa Att'y Gen. 146.

■ If the issue before us was whether the opportunity granted this plaintiff to respond to the complaints that led to his discharge satisfied due process, the answer would be easy. When a formal postdischarge procedure exists in which a discharged employee is afforded a full and

complete evidentiary hearing (such as the hearing before the arbitrator provided for in the school district's labor agreement), a predischarge procedure that only calls for a notice of deficient performance and an opportunity to respond will satisfy due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494, 506 (1985); *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir.1994). That type of notice and opportunity was afforded plaintiff prior to his discharge. However, plaintiff urges that the type of hearing to which he was entitled is not determined by the Due Process Clause but rather by Iowa Code section 35C.6.

■■ We agree that section 35C.6 is the source of the right that plaintiff has asserted in this litigation and we must decide the case based on what that statute requires. As we have stated, the type of hearing called for by that legislation is not described in the statute. For that reason, we are satisfied that some flexibility is called for in determining the type of predischarge hearing that must be afforded under section 35C.6. As is the case with the requirements of the Due Process Clause, the type of hearing required must necessarily vary with the circumstances.

We have recognized that the purpose of section 35C.6 is to insure veterans permanency of employment and protect them from removal except for their own incompetency or misconduct. *Edwards v. Civil Serv. Comm'n*, 227 Iowa 74, 79, 287 N.W. 285, 287 (1939). Because the school district was aware of plaintiff's postdischarge rights under the collective bargaining agreement, which included a complete evidentiary hearing before an independent arbitrator, we are satisfied the purpose of section 35C.6 was fully satisfied by the type of notice and opportunity to respond that was afforded to plaintiff.

We have considered all issues presented and conclude that the decision of the district court should be affirmed.

**AFFIRMED.**